# United States Court of Appeals
### For the Eighth Circuit

_____

No. 17-1517
_____

Billy Wayne Stewart, Sr.

*Plaintiff - Appellant*

v.

Wendy Kelley, Director, Arkansas Department of Correction

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Pine Bluff

_____

Submitted: January 9, 2018
Filed: May 29, 2018

_____

Before LOKEN, BEAM, and KELLY, Circuit Judges.

_____

LOKEN, Circuit Judge.

In September 2011, a Garland County, Arkansas jury found Billy Wayne Stewart, Sr. guilty of raping J.H., an adult woman with the mental capacity of a young child. See Ark. Code Ann. § 5-14-103(a)(2)(B) (2011 Supp.). Under Arkansas law, after finding a defendant guilty of a felony offense, the same jury "determine[s] a sentence within the statutory range," unless both parties waive jury sentencing with the court's consent. See Ark. Code Ann. § 16-97-101. During Stewart's jury

sentencing, the prosecutor introduced evidence of his seven prior felony convictions, which made him a "habitual offender" punishable under Arkansas law by imprisonment for ten years to life. See §§ 5-4-501(b)(2)(A) (2011 Supp.), 5-14-103(c)(1). The trial judge erroneously instructed the jury that Stewart would be eligible for parole after serving 70% of his sentence if sentenced to a term of years. In fact, he was ineligible for parole because of a prior violent felony conviction.

The jury sentenced Stewart to seventy years in prison. The Supreme Court of Arkansas affirmed the conviction on direct appeal. Stewart v. State, 423 S.W.3d 69 (Ark. 2012). Stewart filed a *pro se* petition for post-conviction relief under Arkansas Rule of Criminal Procedure 37.1. The Garland County Circuit Court denied the petition after a hearing, and the Supreme Court of Arkansas affirmed. Stewart v. State, 443 S.W.3d 538 (Ark. 2014). Stewart then filed a timely *pro se* federal habeas petition, raising numerous claims. The district court[1] appointed counsel and directed supplemental briefing on the claim that trial counsel provided ineffective assistance when he failed to object to the erroneous sentencing instruction. The court then denied habeas relief but granted a certificate of appealability on this issue. Reviewing the district court's decision *de novo*, we affirm.

## I. Background

Stewart testified at trial that J.H.'s mother and stepfather took him in while he was searching for a job. He admitted to having sex with J.H. while staying at the family residence, and J.H. had Stewart's child. After the jury found Stewart guilty of rape, the court instructed, without objection, that a sentence of life in prison would render Stewart ineligible for parole, but he would be eligible for parole upon serving 70% of a sentence to a term of years. Unbeknownst to the court and counsel,

---

[1]The Honorable D.P. Marshall Jr., United States District Judge for the Eastern District of Arkansas.

Stewart's prior conviction for first degree battery made him ineligible for parole under Arkansas law. See §§ 16-93-609(b), 5-4-501(d)(2)(A)(vi) (2011 Supp.).

The court instructed the jury that it was permitted to consider the possibility that Stewart would be paroled. During closing arguments, both attorneys referenced parole eligibility. The prosecutor, emphasizing Stewart's serious crime and prior criminal convictions, urged that he be sentenced to life in prison or, alternatively, "anything that will keep him in prison for the rest of his life." Defense counsel noted Stewart would be eligible for parole after serving 70% of a term of years, told the jury that eligibility did not guarantee release, and urged the jury take Stewart's age into account (he was forty-seven years old at the time). After twenty-seven minutes of deliberation, the jury sentenced Stewart to seventy years in prison.

On direct appeal, represented by different counsel, Stewart argued only that the trial court erred in excluding evidence of J.H.'s prior sexual conduct. Stewart's *pro se* petition for post-conviction relief raised three grounds: that barring cross examination of J.H. about her prior sexual conduct violated his Sixth Amendment right of confrontation; ineffective assistance of trial counsel during the guilt phase; and a due process claim that the State's trial preparation coerced J.H.'s testimony. In a supplemental petition, Stewart alleged that the prosecutor made a written pretrial ten-year plea offer that was never presented to Stewart (after a hearing, the trial court found the document was a forgery). Testifying at the Rule 37.1 hearing, Stewart raised a new complaint:

> [The prosecutor] explained to the jury in depth what the seventy percent law is. When I get to prison they put me on a one hundred percent. In my Rule 37 you'll see that it speaks of the coercion and misleading the jury into believing that I'm gonna do seventy percent. . . .
>
> THE COURT: Okay, now that is not grounds for Rule 37, Mr. Stewart.

DEFENDANT STEWART:  Yes, ma'am, but I did include it in there. [We find no reference to this issue in the Rule 37.1 petitions.]

THE COURT:  We're not gonna go into that.

In a post-hearing brief, Stewart specifically argued that trial counsel's failure to object when the prosecutor misled the jury regarding parole eligibility was ineffective assistance.  The trial court denied post-conviction relief without discussing this issue.  Stewart appealed to the Supreme Court of Arkansas, reasserting this claim of ineffective assistance.  In affirming the denial of relief, the Court stated that Stewart's brief "expanded the allegations raised in the Rule 37.1 petition and discussed at the evidentiary hearing," and that it would not consider new arguments on appeal. Stewart, 443 S.W.3d at 542.

Stewart filed a *pro se* federal habeas petition, asserting in part that his trial counsel provided ineffective assistance by failing to object to the court's parole eligibility jury instruction.  After appointing counsel to assist in resolving this claim, the district court denied Stewart's petition, concluding: 1) the claim was not procedurally defaulted; 2) trial counsel provided constitutionally deficient assistance because "parole eligibility statutes are clear and settled law" and the prior violent felony conviction "was obvious and in the case"; and 3) Stewart could not demonstrate prejudice resulting from this attorney error.

## II. Discussion

As the district court recognized, this appeal presents a narrow but difficult ineffective assistance of counsel issue.  Without question, the prosecutor who initially proposed the erroneous parole eligibility instruction, the trial court that gave the instruction, and Stewart's trial and appellate counsel all missed a sentencing issue that was obvious under settled law.  But the issue was belatedly identified.  Trial and appellate counsel focused exclusively on guilt phase issues.  Stewart's *pro se* post-

conviction efforts also focused on guilt phase issues until he learned that the Arkansas Department of Corrections had classified him 100% parole ineligible. He then complained at the Rule 37.1 evidentiary hearing and, more articulately, in his post-conviction briefs to the trial court and the Supreme Court of Arkansas.

By the time Stewart raised the issue, any federal claims of prosecutor misconduct, trial court error, or ineffective assistance of *appellate* counsel were procedurally defaulted. See Dansby v. Hobbs, 766 F.3d 809, 833-34 (8th Cir. 2014), cert. denied, 136 S. Ct. 297 (2015). The claim of ineffective assistance of *trial* counsel was not defaulted because the Garland County trial court denied Stewart's request for appointment of counsel at his Rule 37.1 post-conviction proceeding. See Martinez v. Ryan, 566 U.S. 1 (2012); Trevino v. Thaler, 569 U.S. 413 (2013).

Under Arkansas law, "[p]arole-eligibility determinations by the [Department of Corrections] do not constitute a modification of a prison sentence." Mason v. Hobbs, 453 S.W.3d 679, 682 (Ark.), cert. denied, 136 S. Ct. 147 (2015). Thus, trial counsel's deficient performance did not deprive Stewart of a due process claim that Ark. Code Ann. § 16-93-609(b) should not apply "when the jury, court, and [defendant] were unaware of the Act and did not intend for the Act to apply to the judgment." Stephens v. Hobbs, 2012 WL 4017376, at *1 (Ark. 2012). The only preserved federal issue is whether Stewart has shown that trial counsel's deficient performance prejudiced the defense at trial because there is "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," in other words, that a jury properly instructed regarding parole eligibility would have sentenced him to a term of less than seventy years in prison. Strickland v. Washington, 466 U.S. 668, 694 (1984). Reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. Stewart need not show it is more likely than not the outcome would differ, but "[t]he likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 111-12 (2011).

We agree with the district court that the question is close, primarily because the prosecutor in closing argument drew the jury's attention to the 70% rule and urged that it impose a term of years "that will keep him in prison for the rest of his life." But we agree with the district court that Stewart did not meet his burden to show prejudice:

> The jury heard the troubling facts of this case: Stewart was a family friend. He knew his victim functioned on a first-grade or second-grade level. Nonetheless, when her parents took Stewart in, he had sex with their daughter; and she spent the next eight months unaware that she was carrying Stewart's child. After hearing these facts, the jury gave Stewart a sentence it believed would keep him in prison [at least] until he's ninety-six.
>
> If the jury had heard a correct parole-eligibility instruction, it's *possible* they would have given Stewart a shorter sentence. But in light of the bad facts, Stewart's age, and the lengthy sentence imposed, it's just that -- a possibility. The system malfunctioned in his case, but not to a degree that undermines confidence in the result.

On appeal, Stewart argues that instructing the jury on parole eligibility "creates a reasonable probability that a jury will calculate the parole eligibility number and add more time to compensate." Applying that premise, Stewart assumes the jury added 49 years -- 70% of its seventy-year sentence -- to Stewart's age of 47 to reach an intended sentence that would not end until he was 96 years old. If the jury had been properly instructed he was not eligible for parole, Stewart reasons, "there is a reasonable probability . . . that it would have sentenced to an outcome possibly less than 70 years." Certainly that is a possibility, but "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Strickland, 466 U.S. at 693. Eligibility for parole does not necessarily mean parole will be granted, as Stewart's trial counsel emphasized to the jury. Nor was the jury required to consider the possibility of parole in determining his sentence.

The prosecutor's closing argument emphasized the serious nature of Stewart's crime and the injury he inflicted on mentally impaired J.H. and her family -- facts the jury heard during the guilt phase -- and Stewart's seven prior felony convictions. After deliberating less than thirty minutes, the jury imposed a sentence that would likely exceed Stewart's life span whether or not he would be granted parole. On this record, trial counsel's deficient performance in failing to correct the instructional error of the prosecutor and the trial court does not establish Strickland prejudice sufficient to undermine our confidence in the outcome of the proceedings.

The judgment of the district court is affirmed.

KELLY, Circuit Judge, dissenting.

I agree that Stewart received objectively unreasonable assistance of counsel at sentencing. I respectfully dissent, however, because I believe Stewart was prejudiced by defense counsel's performance. Defense counsel, the prosecutor, the trial judge, and the jury instructions all told the jury that Stewart would be eligible for parole after serving 70 percent of any term-of-years sentence imposed. The State sought a life-without-parole sentence, or alternatively, "anything that will keep him in prison for the rest of his life." Instead, however, the jury selected a 70-year sentence, which under the instructions given would have made Stewart eligible for parole after 49 years, or at age 96. See Weeks v. Angelone, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions."). It turns out Stewart is not eligible for parole at all, and the jury unwittingly imposed a sentence of 70 years without parole. This means Stewart will be released from prison only if he lives to be 117 years old.

To establish prejudice, Stewart must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. Under this standard, I think

there is a reasonable probability that, properly instructed, the same jury that believed it was giving Stewart a 70-year-*with*-parole sentence would impose something other than the 70-year-*without*-parole sentence he is actually serving.  Cf. Rummel v. Estelle, 445 U.S. 263, 281 (1980) ("If nothing else, the possibility of parole, however slim, serves to distinguish [a parole-eligible defendant] from a person sentenced" to life without parole); Hill v. Lockhart, 894 F.2d 1009, 1010 (8th Cir. 1990) (en banc); Savage v. State, No. CR 06-526, 2007 WL 538990, at *2–3 (Ark. 2007) (unpublished per curiam).  The jury declined to impose a life-without-parole sentence, and chose a lengthy prison term instead.  And, had the jury wanted to make sure that Stewart would be in prison until he was 117 years old, it would have imposed a 100-year sentence, which under the erroneous instruction would have rendered him ineligible for parole until then.

_____